UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ON THE EDGE DOCKSIDE, LLC,
DOCKSIDE VIEW, LLC, and
MICHAEL BRADLEY, as Personal
Representative of the Estate of
CLAUDIA BRADLEY

    Plaintiffs,                          CASE NO.: _____

v.

THE BURLINGTON INSURANCE
COMPANY

    Defendant.
_____/

# COMPLAINT

Plaintiffs, ON THE EDGE DOCKSIDE, LLC, a Florida Limited Liability Company ("On The Edge") and DOCKSIDE VIEW, LLC, a Florida Limited Liability Company ("Dockside View"), through their undersigned counsel, file suit against THE BURLINGTON INSURANCE COMPANY ("Burlington"), alleging as follows:

## JURISDICTION AND VENUE

1. On The Edge is a Florida Limited Liability Company with its principal place of business in Fort Pierce, Florida. At all times material hereto, On The Edge was authorized to and did conduct business in Florida. All members of On The Edge are Florida residents.

2. Dockside View is a Florida Limited Liability Company with its principal place of business in Fort Pierce, Florida. At all times material hereto, Dockside View was authorized to and did conduct business in Florida. All members of Dockside View are Florida residents.

1

Dockside View is a necessary and proper party to the action because, in its absence, the Court cannot afford complete relief among the other parties to this action.

3. The Estate of Claudia Bradley ("Bradley Estate") is an estate established in the State of Florida pursuant to the laws of Florida. The Bradley Estate is a necessary and proper party to the action because, in its absence, the Court cannot afford complete relief among the other parties to this action.

4. Burlington is an Illinois corporation with its principal place of business in Hartford, Connecticut. At all times material hereto, Burlington was authorized to and did conduct business in Florida.

5. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6. Venue in this judicial district's Fort Pierce Division is proper pursuant to 28 U.S.C. § 1391(b)(2) because On the Edge and Dockside View maintain businesses in Fort Pierce, the subject insurance policies were issued in Fort Pierce, and a substantial part of the events or omissions giving rise to the claim occurred in Fort Pierce.

7. This action is related to the action captioned *The Burlington Insurance Company v. Dockside View, LLC, et al.*, Case No. 22-cv-14368-DMM (S.D. Fla., Fort Pierce Division), as it involves the same parties, similar legal issues, and arises from the same transaction or occurrence.

## BACKGROUND

8. On The Edge operates a waterfront restaurant and bar at 1136 Seaway Drive in Fort Pierce, Florida called On The Edge Bar & Grille.

9. Dockside View operates a marina and resort at 1160 Seaway Drive in Fort Pierce, Florida called Dockside Marina & Resort.

10. On The Edge has a liquor license and serves alcohol.

11. Dockside View does not have a liquor license and does not serve alcohol.

12. In March 2020, during the beginning of the COVID-19 pandemic, On The Edge and Dockside View were shopping for general liability insurance. On The Edge was also shopping for liquor liability insurance.

13. An insurance broker, EIFS of Florida, Inc. ("EIFS"), assisted with the placement of the insurance for both entities.

14. The existing general liability insurance in place at the time was purchased from Nautilus Insurance Company ("Nautilus"), had an expiration date of April 21, 2020, and listed the insureds on the declarations page as both Dockside View and On The Edge.

15. Burlington offered coverage to Dockside View and On The Edge via its producer, MacDuff Underwriters, Inc. ("MacDuff").

16. MacDuff acted as Burlington's agent for purposes of underwriting the Burlington policies.

17. MacDuff had binding authority for Burlington.

18. When EIFS submitted the insurance application to MacDuff, it inadvertently failed to add On The Edge on the listing of insureds and/or erroneously believed that Dockside View did business as On The Edge Bar & Grille.

19. As part of the application for liquor liability coverage submitted by EIFS to MacDuff, On The Edge's liquor sales figures were submitted and used to calculate the premium for the liquor liability coverage.

20. MacDuff, EIFS, Dockside View, and On The Edge all understood that the insurance sought from Burlington was intended to cover the operations of both Dockside View and On The Edge.

21. With respect to the liquor liability coverage, the Burlington underwriter requested the liquor sales to be insured and was provided an estimate of $750,000 in liquor sales from On The Edge.

22. The Burlington underwriter set the premium for the liquor liability coverage based on this $750,000 sales figure.

23. The liquor liability premium was paid.

24. The liquor liability coverage in the Burlington policy stated that the liquor liability coverage was for liquor sold at the premises at 1136 Seaway Drive in Fort Pierce, which is the address for On The Edge.

25. When MacDuff sent the quotation for the Burlington policy to EIFS, the underwriter mistakenly only listed Dockside View and did not list On The Edge in the listing of insureds. This mistake was later carried over to the policy.

26. As part of the underlying process, Burlington sent an underwriting representative to inspect the insured operations at 1136 Seaway Drive (address of On The Edge) and 1160 Seaway Drive (address of Dockside View).

27. The underwriting report noted that the insured operations included a restaurant and bar and a tiki bar that was closed at the time due to COVID-19.

28. The inspector took pictures of the insured operations. Among the pictures the inspector took at the On The Edge property was a picture of the liquor license for On The Edge for inclusion in the report as follows:



29. The inspector also took a picture of the On The Edge sign, which announced "Ladies Happy Hour All Day" and showed the 1136 Seaway Drive address, as follows:



30. The primary Burlington policy was bound by MacDuff with $1 million in coverage per occurrence, an effective date of April 21, 2020, and an expiration date of April 21, 2021 (the "Primary Policy"). A copy of the Primary Policy is attached hereto as Exhibit A.

31. MacDuff also bound an excess policy with the same policy term and a $5 million per occurrence limit (the "Excess Policy"; the "Primary Policy" and the "Excess Policy", collectively, the "Burlington Policies"). A copy of the Excess Policy is attached hereto as Exhibit B.

32. The Burlington Policies contain liquor liability coverage. The liquor liability coverage part to the Primary Policy shows the location of the liquor sales to be On The Edge address at 1136 Seaway Drive as follows:

```
Policy Number: 940BW57619
LIQUOR LIABILITY
SCHEDULE OF LOCATIONS, CLASSIFICATIONS AND RATES

Loc. No. 1    Bldg. No.    Location Address (Premises you own, rent or occupy):
                           1136 Seaway Dr
                           Fort Pierce, FL 34949

Code No. 54273             Classification
                           Bar & Tavern - closes after 2 am

Premium is:
[X] Adjustable (See Premium Audit Conditions)
[ ] Flat (Not Adjustable)
[ ] Fully Earned When Written
[X] Minimum Premium

Premium Base    Rate Per $1,000 of liquor sales    Premium
```

33. The Excess Policy follows form to the Primary Policy including, but not limited to, by providing liquor liability coverage.

34. The Primary Policy was subject to an adjustable premium, in which the final premium adjusts based on the actual sales numbers for the policy period. The minimum premium

6

for the Primary Policy was based on the estimated sales derived from the prior year's sales figures, which, in the case of liquor sales, was On The Edge's liquor sales revenue of $750,000.

35. The premiums were paid for the Burlington Policies.

36. On February 7, 2021, Ms. Claudia Bradley was tragically struck and killed by a drunk driver who had visited several bars that night, including On The Edge Bar & Grille (the "Incident").

37. EIFS provided notice to Burlington of the Incident in April 2021.

38. In a letter dated June 29, 2021, Burlington accepted liquor liability coverage for the Incident for Dockside View under the Primary Policy, but denied coverage for On The Edge on the basis that On The Edge was not listed as an insured on the policy. A copy of this letter is attached hereto as Exhibit C.

39. In a letter dated July 22, 2021, Burlington took the same coverage position for its Excess Policy as it did its Primary Policy, except to add that the excess policy did not apply until exhaustion of the Primary Policy limit. A copy of this letter is attached hereto as Exhibit D.

40. Soon after receiving the letters stating that On The Edge was not covered by the Burlington Policies, On The Edge contacted EIFS to seek correction of the named insured listing to conform to the intent of the relevant parties.

41. EIFS contacted MacDuff, Burlington's underwriting representative, which recognized the error in failing to name On The Edge as an insured on the Burlington Policies.

42. In August 2021, MacDuff prepared a Change Request and sent it to Burlington for processing so that On The Edge would be added as a named insured on the Burlington Policies. MacDuff noted in the e-mail correspondence to Burlington that leaving On The Edge off the list

of named insureds on the Burlington Policies was an oversight, and that the liquor liability exposure from On The Edge was included in the premium.

43. Burlington did not contest that leaving On The Edge off of the insured listing to the Burlington Policies was a mistake, yet Burlington refused to issue the Change Request endorsement to add On The Edge as an insured, stating a policy against "backdating" coverage.

44. Burlington provided no other reason for refusing to issue the Change Request endorsement.

45. In September 2021, Burlington conducted a premium audit on the Primary Policy. The audit resulted in an additional premium owed to Burlington due, in part, to higher than expected alcohol sales from On The Edge.

46. Dockside View and On The Edge disputed the results of the audit, and the parties discussed how much additional premium was owing based on the alcohol sales of On The Edge during the policy period.

47. Burlington revised its audit premium calculations and the additional premium was paid.

48. In July 2022, the Bradley Estate filed a wrongful death lawsuit against On The Edge and Dockside View in circuit court in St. Lucie County under Case Number 562022CA001332AXXXHC (the "Underlying Action").

49. In a September 28, 2022 letter, Burlington agreed to defend Dockside View against the Underlying Action under a reservation of rights, but disclaimed any defense or indemnity obligations to On The Edge. A copy of this letter is attached hereto as Exhibit E.

50. In December 2024, the Bradley Estate filed a Second Amended Complaint in the Underlying Action, a copy of which is attached hereto as Exhibit F. The Second Amended Complaint is the currently operative complaint in the Underlying Action.

51. In an April 7, 2025 letter, Burlington reiterated its agreement to defend Dockside View against the Underlying Action under a reservation of rights, and to disclaim any defense or indemnity obligations to On The Edge for the Second Amended Complaint. A copy of this letter is attached hereto as Exhibit G.

## **COUNT I – REFORMATION DUE TO MUTUAL MISTAKE**

52. Plaintiffs hereby reaffirm and reallege paragraphs 1-51 above as though fully set forth herein.

53. The mutual intent of Burlington, Dockside View, and On The Edge was to insure On The Edge on the Burlington Policies. This intent is reflected in the underwriting discussions and documents, including the rating sheet and control sheet, as well as the classification and rate information contained in the declarations page to the Primary Policy, which all show that the premium was calculated based on the liquor sales of On The Edge.

54. The insurance broker and underwriter both inadvertently failed to have On The Edge named on the Burlington Policies.

55. The Burlington Policies do not accurately reflect the intent of the relevant parties to have On The Edge as an insured on the Burlington Policies.

56. It is equitable for this Court to reform the Burlington Policies to name On The Edge as an insured on the policies, as the premium was paid to have On The Edge covered on the Burlington Policies, so reformation will simply provide what was paid for, and conform the policies to the intent of the relevant parties.

57. Reformation of the Burlington Policies is not unfair or inequitable because it would not give On The Edge "free" coverage or something for nothing. Burlington was fully paid to assume the risk of On The Edge's liquor liability, and reformation would not expand Burlington's coverage obligations beyond what was negotiated, rated, agreed, and paid for.

58. Reformation of the Burlington Policies will result in the policies accurately reflecting the relevant parties' agreement to provide coverage to On The Edge.

WHEREFORE, On The Edge requests this Court reform the Burlington Policies to properly express the intent of the relevant parties to name On The Edge as an insured, and grant On The Edge any other relief the Court deems just, equitable, and proper under the circumstances.

## **COUNT II – REFORMATION DUE TO UNILATERAL MISTAKE**

59. Plaintiffs hereby reaffirm and reallege paragraphs 1-51 above as though fully set forth herein.

60. The broker inadvertently failed to inform the Burlington underwriter to add On The Edge to the Burlington Policies.

61. The broker may have erroneously believed that Dockside View did business as On The Edge Bar & Grille and therefore On The Edge did not need to be named as a separate insured entity.

62. Burlington knew that Dockside View did not have a liquor license and did not sell liquor.

63. Burlington knew that On The Edge had a liquor license and the premium rating for the Burlington Policy was based on On The Edge's liquor sales.

64. Burlington knew On The Edge was erroneously left off of the insured listing but purposely issued the Burlington Policies without listing On The Edge as an insured while keeping the premium for the liquor liability coverage.

65. Burlington refused to correct the Burlington Policies, despite the representation of its own underwriting representative, MacDuff, that a mistake was made, and provided no reason for its refusal to correct the mistake.

66. Burlington's inequitable conduct threatens to remove coverage for On The Edge that was agreed to and paid for.

67. As a result of the foregoing, the Burlington Policies do not reflect the intent of the relevant parties to insure On The Edge on the Burlington Policies.

68. It is equitable for this Court to reform the Burlington Policies to name On The Edge as an insured on the policies, as the premium was paid to have On The Edge covered on the Burlington Policies, so reformation will simply provide what was paid for, and conform the policies to the intent of the relevant parties.

69. Reformation of the Burlington Policies is not unfair or inequitable because it would not give On The Edge "free" coverage or something for nothing. Burlington was fully paid to assume the risk of On The Edge's liquor liability, and reformation would not expand Burlington's coverage obligations beyond what was negotiated, rated, agreed, and paid for.

70. Reformation of the Burlington Policies will result in the policies accurately reflecting the relevant parties' agreement to provide coverage to On The Edge.

WHEREFORE, On The Edge requests this Court to reform the Burlington Policies to properly express the intent of the relevant parties to name On The Edge as an insured, and grant On The Edge any other relief the Court deems just, equitable, and proper under the circumstances.

## COUNT III – BREACH OF CONTRACT
### (By On The Edge - Duty to Defend)

71. Plaintiffs hereby reaffirm and reallege paragraphs 1-51 above as though fully set forth herein.

72. The Burlington Policies constitute valid and enforceable contracts between Burlington, On The Edge, and Dockside View.

73. Premiums for the Burlington Policies have been paid, Burlington was provided with timely notice of the Underlying Action, and all obligations and conditions of the Burlington Policies have been satisfied.

74. Pursuant to the terms of the Primary Policy, Burlington is obligated to defend On The Edge against the Underlying Action.

75. The Underlying Action falls squarely within the liquor liability insuring agreement of the Primary Policy and coverage is not otherwise excluded by any terms or conditions of the Primary Policy.

76. Burlington has breached its duty to defend On The Edge under the Primary Policy by, among other things, refusing or failing to acknowledge its obligation to defend and/or to pay the costs of defending On The Edge against the Underlying Action under the Primary Policy.

77. On The Edge has complied with all terms, conditions, and prerequisites to coverage set forth in the Primary Policy and remains ready to perform all its obligations under the Primary Policy or has been excused from compliance by Burlington's breach or other conduct.

78. As a direct and proximate result of Burlington's breach of its duty to defend On The Edge, On The Edge has incurred, and continues to incur, substantial damages in the form of defense fees and costs that Burlington should be paying under the Primary Policy. On The Edge is also entitled to pre-judgment and post-judgment interest on its damages at the legal rate, as well

as the costs of collection, including, without limitation, its attorneys' fees incurred or to be incurred in connection with this action, under 28 U.S.C. § 1961, Rule 54 of the Federal Rules of Civil Procedure, Fla. Stat. Ann. § 627.428 and/or Fla. Stat. Ann. § 626.9373, Fla. Stat. Ann. § 55.03, Fla. Stat. Ann. § 57.041, and/or other applicable authority.

WHEREFORE, On The Edge requests this Court enter judgment against Burlington, finding that Burlington has breached its obligation to defend On The Edge against the Underlying Action, and awarding On The Edge its damages plus attorneys' fees, interest, taxable costs, consequential damages, and any other and further relief the Court deems just, equitable, and proper under the circumstances.

## COUNT IV – DECLARATORY JUDGMENT
**(By On The Edge - Duty to Indemnify)**

79. Plaintiffs hereby reaffirm and reallege paragraphs 1-51 above as though fully set forth herein.

80. On The Edge contends that it is entitled to coverage under the Burlington Policies for any amounts it may be obligated to pay in a settlement or judgment in the Underlying Action. On The Edge is informed and believes, and on that basis alleges, that Burlington disputes that On The Edge is entitled to such coverage. Therefore, an actual and justiciable controversy may arise between On The Edge and Burlington concerning the interpretation and construction of the Burlington Policies, and the rights and obligations of the parties thereto, with respect to On The Edge's entitlement to coverage in connection with the Underlying Action.

81. Pursuant to 28 U.S.C. § 2201, On The Edge is entitled to a judicial declaration from this Court confirming that, subject to the Burlington Policies' limits, the Burlington Policies cover

On The Edge for any settlement or judgment in the Underlying Action, and that Burlington is obligated to pay for any such settlement or judgment.

82. On The Edge recognizes that a declaration as to indemnity coverage is premature at this time until and unless On The Edge enters into a settlement or has a judgment entered against it in the Underlying Action.

83. In accordance with the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure, at the appropriate time this Court should declare the rights and obligations of On The Edge and Burlington with respect to the Burlington Policies, including Burlington's obligation to indemnify On The Edge for all losses arising out of the Underlying Action, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

84. On The Edge is also entitled to pre-judgment and post-judgment interest on its damages at the legal rate, as well as the costs of collection, including, without limitation, its attorneys' fees incurred or to be incurred in connection with this action, under 28 U.S.C. § 1961, Rule 54 of the Federal Rules of Civil Procedure, Fla. Stat. Ann. § 627.428 and/or Fla. Stat. Ann. § 626.9373, Fla. Stat. Ann. § 55.03, Fla. Stat. Ann. § 57.041, and/or other applicable authority.

WHEREFORE, On The Edge requests this Court enter, at the appropriate time, a declaratory judgment finding that On The Edge is entitled to indemnity coverage under the Burlington Policies, up to the limits of the Burlington Policies, for any settlement or judgment in the Underlying Action, and awarding On The Edge its damages plus attorneys' fees, interest, taxable costs, consequential damages, and any other and further relief the Court deems just, equitable, and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiffs respectfully request a trial by jury on all claims, as well as on each defense which may be raised by Defendant, which are triable to a jury.

Respectfully submitted this 9th day of April 2025,

FRIEDMAN P.A.

*/s/ Robert H. Friedman*
Robert H. Friedman
Florida Bar No. 25994
rob@friedmanpa.com
340 Royal Poinciana Way
Suite 317-202
Palm Beach, FL  33480
Telephone: (561) 800-2110
Facsimile: (561) 246-3413

Robert V. Schwerer
HAYSKAR, WALKER, SCHWERER, DUNDAS & MCCAIN P.A.
Florida Bar No. 320315
schwererlaw@aol.com
130 South Indian River Drive, Suite 304
Fort Pierce, FL 34950
Telephone: (772) 461-2310
Facsimile: (772) 461-6790

Counsel for Plaintiffs On The Edge Dockside, LLC and Dockside View, LLC